IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-104-FL

| | |
|---|---|
| TRACY MOODY-WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | **ORDER AND** |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| LIPOSCIENCE, LOUVENIA CLEMONS, and ) | |
| RONALD BESS, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the following motions:

1. Motion to Amend Complaint filed by *pro se* Plaintiff Tracy Moody-Williams ("Plaintiff") [DE-10];

2. Partial Motion to Dismiss the complaint of Plaintiff for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6), filed by Defendants LipoScience, Louvenia Clemons, and Ronald Bess ("Defendants") [DE-13]; and

3. Motion for Judicial Notice filed by Plaintiff [DE-29].

All briefing is complete, and the pending motions are ripe for adjudication. Plaintiff's motion to amend her complaint and her motion for judicial notice are considered here for determination in accordance with 28 U.S.C. § 636(b)(1)(A). *See* Local Civil Rule 72.3(b). The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendants' motion to dismiss is considered as a recommendation to the District Court in accordance with 28 U.S.C. § 636(b)(1)(B). *See* Local Civil Rule 72.3(c). For the reasons set forth below, this court ALLOWS Plaintiff's motion to amend her complaint [DE-10], DENIES Plaintiff's motion for judicial notice [DE-29], and RECOMMENDS that the District Court ALLOW Defendants' partial motion to dismiss the

complaint for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted [DE-13].

## I. PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, initiated this action by complaint filed February 2, 2012 in the Superior Court of Franklin County, North Carolina. [DE-1-1]. According to her complaint, Plaintiff seeks damages and equitable relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and the Age Discrimination in Employment Act ("ADEA"). [DE 1-1 at 9]. Plaintiff also purports to assert a claim for intentional infliction of emotional distress ("IIED") under North Carolina tort law. Defendants timely filed a notice of removal on March 1, 2012, prior to Defendants' responsive pleading, under the provisions of 28 U.S.C. § 1331, based on Plaintiff's claims under Title VII, the ADA, the GINA, and the ADEA. [DE-1].

On March 13, 2012, prior to either a responsive pleading or motion under Rule 12(b), (e) or (f), Plaintiff filed a motion to amend her complaint. [DE-10]. Through her motion, Plaintiff seeks to incorporate into her complaint the notice of charge of discrimination she filed against Defendants with the Equal Employment Opportunity Commission ("EEOC"), and the notice of right to sue issued by the EEOC, which Plaintiff failed to attach to her complaint. Plaintiff's motion to amend does not seek to assert new causes of action or add new parties. Defendants have not objected to Plaintiff's motion.

Thereafter, on March 26, 2012, Defendants filed a partial motion to dismiss [DE-13] under Rules 12(b)(1) and 12(b)(6) and an answer [DE-15]. On April 19, 2012, Plaintiff filed a "response" [DE-25] to Defendants' partial motion to dismiss entitled "Plaintiffs' Complience to a Partial Motion

to Dismiss [sic]," in which she "requests that the court grant due diligence and partially dismiss the Plaintiffs [sic] claim against all of the Defendants related to the [ADA], the [ADEA] and the [GINA] because the Plaintiff did fail to include these three specific acts of discrimination in the charge she filed with the [EEOC]. " Pl.'s Resp. [DE-25 at 1]. Plaintiff also filed an additional "response" [DE-26] to Defendants' partial motion to dismiss. Defendants submitted a reply to these responses on May 7, 2012. Def.'s Reply Brf. [DE-27]. On May 18, 2012, Plaintiff filed a document entitled "Request for Judicial Notice Motion" [DE-29], as well as a "Response to Defendants' Reply Brief Regarding Partial Motion to Dismiss" in which Plaintiff challenges the credibility of Defendants and their counsel. [DE-30].

## II. FACTUAL BACKGROUND

Plaintiff's complaint focuses on her employment as a temporary employee at LipoScience, a diagnostic company located in Raleigh, North Carolina. Plaintiff began working at LipoScience on February 10, 2010, having been placed into her position as a data control specialist at LipoScience through a temporary employment agency, Innovative Talent Solutions ("ITS"). Compl. [DE-1-1 at 10]. Plaintiff's position was to last approximately six months. *Id.*

Plaintiff's supervisor at LipoScience was Defendant Clemons. *Id.* According to Plaintiff, the employees who reported to Clemons did not like her. *Id.* at 11. Clemons either ignored Plaintiff and other employees or intruded on their conversations, and Plaintiff claimed that she had to "walk[] on egg shells" around Clemons. *Id.* at 11-12. Clemons had Plaintiff perform non-work-related tasks, such as writing Clemons' boyfriend's resume. *Id.* at 11. Plaintiff further claimed that Clemons watched television on her computer all day and gossiped constantly. *Id.* at 12. Clemons would not speak in the mornings, and would not inform her employees on days that she was not coming in to

3

work. *Id.* However, Plaintiff never complained about Clemons' behavior, as she wished to eventually obtain full-time employment with LipoScience. *Id.*

Plaintiff took leave from her assignment at LipoScience on July 16, 2010 in order to undergo surgery. *Id.* at 12. Clemons "insisted" Plaintiff return in a few weeks, and that there would be plenty of work for Plaintiff when she returned. *Id.* Prior to returning from her leave, Plaintiff alleges that her doctor wrote her a prescription for Prozac on August 20, 2010, due to her "depression just knowing what I would have to endure when I started work on August 23rd, 2010," and alleges that LipoScience "[was] totally responsible for my mental state." [DE-10-14 at 5-6].

Upon her return to LipoScience, she began volunteering in the laboratory two days a week so that she could reach forty hours of work per week. [DE-1-1 at 13]. Plaintiff alleges that she was disgusted by the profanity and lack of discipline within Clemons' department. *Id.* at 14. For the next few months, Plaintiff applied for almost every position that was posted at LipoScience so that she could leave Clemons' department. *Id.*

Plaintiff alleges further that when she returned to LipoScience on August 23, 2010, Bess, a male co-worker, began to "harass" her. *Id.* at 14. In particular, Plaintiff alleges that Bess asked Plaintiff for a "welcome back hug" and that she hugged him because this was "typical when you do not see someone for a while." *Id.* Plaintiff claims Bess also began "flirting" with her and asking her if she was married. *Id.* Plaintiff told Bess she was married and that she had no interest in him. *Id.* After a visit from Plaintiff's husband to the work place, Bess told Plaintiff to, "tell your husband I am going to take you away from him." *Id.* Additionally, Plaintiff alleges that Bess waited for Plaintiff outside of the women's restroom. *Id.* In one instance, Bess followed Plaintiff to her car and attempted to kiss her. *Id.* Plaintiff alleges Bess also tried to follow Plaintiff into the women's

4

restroom to kiss her. *Id.* at 18. Bess subsequently became even "more aggressive," asking Plaintiff for hugs and attempting to kiss Plaintiff, in response to which Plaintiff always turned her head or pushed him away. *Id.* at 15. Additionally, at the company's Christmas luncheon, Bess gave Plaintiff his telephone number. *Id.*

Plaintiff alleges that Bess's actions "really bothered [her]," that she was "afraid" of running into Bess, and that she got to the point where she would have panic attacks when she encountered Bess. *Id.* at 14-15. Plaintiff also claims she was "devastated" when Bess attempted to follow her into the women's restroom and kiss her. *Id.* at 18.

Meanwhile, Plaintiff spoke to Yvonne Lavallee, a laboratory supervisor at LipoScience, regarding full-time employment in the laboratory. *Id.* at 16. Clemons confronted Plaintiff about her job discussions with Lavallee and advised Plaintiff that she would offer Plaintiff a job in Clemons' department. *Id.* Plaintiff and Clemons discussed other issues, including Bess's behavior towards Plaintiff. *Id.* Clemons responded "that's just [Bess]" and described an affair that Bess had with another LipoScience employee. *Id.* at 16-17.

After speaking with Clemons, Plaintiff emailed Lavallee, declining the job in the laboratory. *Id.* at 17. Plaintiff subsequently noticed that one of the employees in Clemons' department, Kristi, began treating her negatively. *Id.* Eventually, Plaintiff learned that Clemons had told Kristi about negative comments Plaintiff had made to Clemons about Kristi during a previous conversation. *Id.* at 17-18. Plaintiff alleged that she could not stop crying about the harassment from Bess, Kristi's comments to Plaintiff, and the situation about the laboratory position at LipoScience, and stated that she was "losing her mind." *Id.* at 18-19. Plaintiff contacted her doctor and "briefed her on the situation," and on January 18, 2011, Plaintiff was prescribed Xanax for anxiety. *Id.* at 18; [DE-10-14

at 5]. Plaintiff does not specify whether her anxiety stemmed from Bess's alleged harassment or the issues she was having with Clemons and her co-workers. On February 14, 2011, Plaintiff received a call from ITS informing her that LipoScience was terminating her assignment. *Id.* at 19.

Thereafter, Plaintiff filed a claim of employment discrimination with the EEOC. [DE-10-6]. In her EEOC Intake Questionnaire, Plaintiff indicated "Sex" as the basis for her discrimination claim by checking the box corresponding to "Sex." *Id.* at 3. Plaintiff did not check any of the boxes on the questionnaire designated for discrimination on the basis of disability, age, or genetic information. *Id.* Additionally, Plaintiff listed sexual harassment as an additional basis for her claim. *Id.* On November 2, 2011, the EEOC issued Plaintiff her notice of suit rights [DE-10-11 at 2].

Based on the foregoing, Plaintiff seeks damages and equitable relief for Defendants' alleged violations of Title VII, the ADA, the ADEA, the GINA, and under state tort law pursuant to her IIED claim.

### III. MOTION TO AMEND COMPLAINT

Plaintiff has moved to amend her complaint to incorporate various documents into her pleading, such as (1) Plaintiff's biographical information [DE-10-1], (2) correspondence with ITS [DE-10-3], as well as Plaintiff's contract agreement with ITS [DE-10-4], (3) Plaintiff's EEOC Intake Questionnaire [DE-10-6], Notice of Charge of Discrimination [DE-10-7], the EEOC Dismissal and Notice of Rights [DE-10-11], and Plaintiff's correspondence with her EEOC Investigator [DE-10-10], and (4) Plaintiff's correspondence with various employees at LipoScience [DE-10-8, DE-10-9]. Plaintiff also seeks to add letters from various individuals attesting to Plaintiff's character dated after the filing of the initial complaint [DE-10-13], as well as an undated "Response to Respondants' Evidence [sic]" [DE-10-14]. Defendants have not responded to Plaintiff's motion to amend.

6

In accordance with Rule 15 of the Federal Rules of Civil Procedure, a plaintiff is entitled to amend her complaint once as a matter of course before, or within 21 days after, the defendant files a responsive pleading or motion to dismiss under Rule 12(b), (e) or (f). *See* FED. R. CIV. P. 15(a)(1). At the time Plaintiff filed her motion to amend, Defendants had neither filed an answer to Plaintiff's complaint nor filed their motion to dismiss. Plaintiff's motion to amend is therefore ALLOWED.

## IV. RULE 12(B)(1) MOTION TO DISMISS

The court is mindful of the latitude extended to pleadings of *pro se* litigants. *See White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). In particular, the court must liberally construe a pleading filed by a *pro se* litigant for the development of a potentially meritorious claim. *Id.* Nonetheless, courts are not required to "conjure up questions never squarely presented to them [and] judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. Accordingly, when a party sets forth a Rule 12(b)(1) defense in addition to other Rule 12 defenses, the court should resolve the 12(b)(1) motion first, because if the court lacks jurisdiction, the remaining motions are moot. *Foxworth v. United States*, No. 3:10-CV-317, 2010 U.S. Dist. LEXIS 106759, at *5, 2010 WL 3938267, at *2 (E.D. Va. Oct. 6, 2010) (citing *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006)).

Here, Defendants argue that Plaintiff's failure to exhaust the EEOC's administrative process with respect to a claim of employment discrimination under the ADA, the ADEA, and the GINA deprives the federal courts of subject matter jurisdiction over those claims. As previously mentioned, Plaintiff's EEOC charge alleges only that she was sexually harassed at LipoScience;

7

there is no allegation of age or disability discrimination or discrimination based on genetic information. *See, e.g., Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) ("plaintiff's claim generally will be barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex").

However, the court need go no further in its analysis, as Plaintiff herself has requested that the court dismiss her claims against all Defendants arising under the ADA, the ADEA, and GINA. *See* Pl.'s Resp. [DE-25 at 1]. Given that Plaintiff has expressly assented that these claims be dismissed, the court recommends that Defendants' motion to dismiss Plaintiff's complaint with respect to claims purportedly arising under the ADA, ADEA, and GINA against all Defendants be ALLOWED.

## V. RULE 12(B)(6) MOTION TO DISMISS

In light of the above recommended disposition, the remaining issues before the court are (1) whether Plaintiff's claims against the individual Defendants Bess and Clemons under Title VII should be dismissed pursuant to Rule 12(b)(6) because they are not "employers" within the meaning of the statute, and (2) whether Plaintiff has alleged sufficient facts to state a claim for intentional infliction of emotional distress against all Defendants.

### A.   Standard of Review

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *see also Walsh v. Mitchell*, 427 Fed. Appx. 282 (4th Cir. 2011).

8

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

The standard for evaluating the sufficiency of the pleading in the instant case is particularly flexible because "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's

9

obligation to liberally construe a *pro se* plaintiff's allegations, however, the court is not required to accept a *pro se* plaintiff's contentions as true, and cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed").

## B. Plaintiff's Title VII Claims against Defendants Clemons and Bess

Plaintiff has asserted claims of discrimination arising under Title VII against individual Defendants Clemons and Bess. According to Plaintiff, Clemons was her supervisor and Bess was a coworker at LipoScience. Compl. [DE-1-1 at 10, 11 and 14]. Individuals, however, may not be personally liable under Title VII. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) ("Supervisors are not liable in their individual capacities under Title VII violations" because an individual supervisor is not the plaintiff's "employer"); *see Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 570 (E.D.N.C. 2009) ("[I]ndividual employees of corporate entities ... are not liable in their individual capacities for Title VII violations because such individuals are not 'employers' under Title VII"). Accordingly, the court recommends that Defendants' motion to dismiss the Title VII claims against Defendants Clemons and Bess be ALLOWED.

## C. Plaintiff's State Law Claim for IIED against Defendants

Plaintiff alleges that she was subjected to intentional infliction of emotional distress by all Defendants. Under North Carolina law, in order to state a claim for IIED a plaintiff must allege sufficient facts which demonstrate "(1) extreme and outrageous conduct, (2) which is intended to

10

cause and does cause, (3) severe emotional distress to another." *Pierce v. Atl. Grp., Inc.*, 724 S.E.2d 568, 577 (N.C. Ct. App. 2012). Whether behavior constitutes extreme and outrageous conduct causing severe emotional distress is a question of law for the court. *Foster v. Crandell*, 638 S.E.2d 526, 537 (N.C. Ct. App. 2007). North Carolina courts have "set a high threshold for a finding that conduct" meets this standard. *Dobson v. Harris*, 521 S.E.2d 710, 715 (N.C. Ct. App. 1999), *rev'd on other grounds*, 530 S.E.2d 829 (N.C. 2000).

In the context of one's employment particularly, North Carolina courts have been reluctant to find actionable intentional infliction of emotional distress claims. *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 544 (E.D.N.C. 2008) (citations omitted); *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004) (citations omitted); *Thomas v. Northern Telecom, Inc.*, 157 F. Supp. 2d 627, 635 (M.D.N.C.2000) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of [IIED]."). In order to meet the "extreme and outrageous conduct" requirement, Plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986) (internal citations omitted)). The alleged behavior must be more than "mere insults, indignities, threats, ... and ... plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan*, 340 S.E.2d at 123 (quoting Restatement (Second) of Torts, § 46 comment (d) (1965)).

In North Carolina, "claims of IIED based upon allegations of sexual harassment generally have included one or more of the following: an unfair power relationship between defendant and

11

plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff, or; defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts." *Guthrie v. Clegg's Termite and Pest Control*, 567 S.E.2d 403, 410 (N.C. Ct. App. 2002). *See Poole v. Copland, Inc.*, 498 S.E.2d 602 (N.C. 1998) (obscene language; sexual advances; defendant unzips pants and grabs his crotch while making vulgar suggestions to plaintiff); *Waddle v. Sparks*, 414 S.E.2d 22 (N.C. 1992) (obscene references to plaintiff's private parts; vulgarity; harasser was plaintiff's supervisor); *Denning-Boyles v. WCES, Inc.*, 473 S.E.2d 38 (N.C. Ct. App. 1996) (vulgarity; sexual advances); *Ruff v. Reeves Brothers, Inc.*, 468 S.E.2d 592 (N.C. Ct. App. 1996) (obscene suggestions; defendants held plaintiff while pulling up her shirt, and, on another occasion, held plaintiff while pulling her legs apart; sexual advances); *Bryant v. Thalhimer Brothers, Inc.*, 437 S.E.2d 519 (N.C. Ct. App. 1993), *disc. review denied*, 445 S.E.2d 29 (N.C. 1994) (vulgar sexual language; threatening behavior; "rubbed his penis across [plaintiff's] hand); *Brown v. Burlington Industries, Inc.*, 378 S.E.2d 232 (N.C. Ct. App. 1989) (sexual advances; genital contact; defendant was plaintiff's supervisor); *Hogan*, 340 S.E.2d at 121 (sexual advances by supervisor; genital contact; vulgar language).

Turning to the contents of the complaint, Plaintiff's allegations regarding Clemons' behavior fail to rise to the level of extreme and outrageous as a matter of law. Plaintiff asserts that Clemons was rude to her and others, gossiped about her with other employees, had Plaintiff perform non-work-related duties, and attempted to interfere with Plaintiff's efforts to obtain a job in the laboratory. These alleged actions do not describe conduct that is outside the bounds tolerated in a decent society and fail to sustain a cause of action for IIED against Defendant Clemons. *See Hogan*, 340 S.E.2d at 122-23 (affirming summary judgment for employer where employee claimed that her

co-worker screamed at her, called her names, interfered with the employees under her supervision, and threw a menu at her).

Additionally, the conduct alleged in Plaintiff's complaint regarding the harassment by Bess is not extreme and outrageous as a matter of law. *See Lemay v. Bridgestone Bandag, LLC*, No. 5:11-CV-723-BO, 2012 U.S. Dist. LEXIS 114086, at *8, 2012 WL 3524838, at *3 (E.D.N.C. Aug. 14, 2012). Plaintiff alleges that Bess asked for a "welcome back" hug and that she willingly hugged him because she felt it was natural. Plaintiff alleges further that Bess "flirted" with her, asked her if she was married, told her that he was going to take her away from her husband, waited for her outside the restroom, followed Plaintiff to her car one day, asked to hug her and attempted to kiss her, gave Plaintiff his phone number, and tried to follow Plaintiff into the restroom. Bess was not Plaintiff's supervisor or workplace superior, he did not swear or employ obscene language, he referred to nothing vulgar, and although he attempted to kiss Plaintiff, he did not express or manifest any other interest in sexual activity with Plaintiff such as physical or sexual touching, which North Carolina courts have focused on when addressing the viability of this tort in the context of one's employment. While the court may find Bess' alleged behavior to be boorish, such conduct does not rise to the high standard of outrageous, extreme, or utterly atrocious behavior so as to satisfy the first element of the tort, requiring a showing of "extreme and outrageous conduct." *See Guthrie*, 567 S.E.2d at 410.

Even if the court were to conclude that Bess' alleged behavior was extreme and outrageous, Plaintiff's claim fails nonetheless because Plaintiff has failed to allege that she suffered severe emotional distress attributable to Bess. Although an actual diagnosis by a medical professional is not always required or necessary in order to support a claim of IIED, "'mere temporary fright, disappointment, or regret will not suffice' to satisfy the element of severe emotional distress." *Estate*

13

of *Hendrickson v. Genesis Health Venture, Inc.*, 565 S.E.2d 254, 265 (N.C. Ct. App. 2002) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990)). To show severe emotional distress, a plaintiff "must do more than simply state that he has suffered severe emotional distress; there must be evidence that he has suffered from an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so." *May v. City of Durham*, 525 S.E.2d 223, 230 (N.C. Ct. App. 2000) (internal quotations omitted). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. J (1965).

Plaintiff alleged that she would have "panic attacks" when she saw Bess [DE 1-1 at 15] and that she was "devastated" when Bess attempted to follow her into the restroom. *Id.* at 18. Plaintiff noted that Bess's action "really bothered [her]," and that she was "afraid" of running into Bess. *Id.* at 14-15. However, "these feelings of 'fear, embarrassment, and humiliation' are insufficient, standing alone, to allege that [her] emotional distress was severe." *See Lemay*, 2012 U.S. Dist. LEXIS 114086, at *8, 2012 WL 3524838, at *3 (citing *Kaplan v. Prolife Action League of Greensboro*, 431 S.E.2d 828, 838 (N.C. Ct. App. 2001)).

Plaintiff alleges that her doctor wrote her a prescription for Prozac. However, this allegedly occurred in August of 2010, before the alleged harassment by Bess began. [DE-10-14 at 5]. Plaintiff also alleges that her doctor wrote her a prescription for Xanax for anxiety in January of 2011 after Plaintiff "brief[ed] her [doctor] on the situation" [DE-1-1 at 18]; however, it is unclear whether Plaintiff's anxiety stemmed specifically from the alleged harassment by Bess or the issues she was

14

having with Clemons and her other co-workers. Moreover, Plaintiff fails to allege that she was ever diagnosed with a chronic mental or emotional disorder, that she was ever hospitalized, or that Plaintiff was otherwise debilitated as a result of Bess' alleged behavior. In spite of Plaintiff's reaction to Bess' behavior, "[a]bsent an allegation that [Plaintiff] suffered an emotional or mental disorder that was *severe or disabling*, [her] claim must be dismissed." *See Lemay*, 2012 U.S. Dist. LEXIS 114086, at *9 (citing *Waddle v. Sparks*, 414 S.E.2d 22, 27-28 (N.C. 1992)).

In light of the court's recommendation allowing Defendants' motion to dismiss the IIED claims against Clemons and Bess, the court further recommends allowing Defendants' motion to dismiss with regards to their employer LipoScience. *See Guthrie*, 567 S.E.2d at 410 (holding that "having concluded that defendant [individual] did not engage in the alleged tortious behavior, we necessarily conclude that plaintiff has no claim against defendant [employer]"). Accordingly, the court recommends that Defendants' motion to dismiss Plaintiff's IIED claim against all Defendants be ALLOWED.

## V. MOTION FOR JUDICIAL NOTICE

Plaintiff filed a motion requesting that the court take judicial notice and "adjudicate the facts presented by the Plaintiff which will challenge the credibility of [defense counsel] and the Defendants." [DE-29 at 1]. In particular, Plaintiff asserts that Defendants and their counsel behaved improperly by drawing the court's attention to the fact that Plaintiff's original complaint did not have any of the exhibits referenced therein attached, such as Plaintiff's EEOC charge or the EEOC dismissal and notice of rights.[1] Plaintiff asks the court to sanction Defendants and their counsel.

---

[1] As discussed above, by granting Plaintiff's motion to amend, this perceived deficiency will be cured.

Defendants, however, have not disputed that Plaintiff filed an EEOC charge. The dispute appears to have arisen as a result of documents missing from the state court case file which were not included in the documents filed in this court upon removal. *See* Defs.' Reply Brf. at 4-5; Decl. of Lisa Ostrander [DE-27-1]. Defendants' explanation as to the circumstances in obtaining copies of the case file from state court prior to removal assures this court of no improper behavior. Moreover, this court has allowed Plaintiff's motion to amend her complaint, permitting Plaintiff to incorporate her exhibits into her pleadings. Accordingly, Plaintiff's motion [DE-29] is DENIED.

## VI. CONCLUSION

For the reasons stated above, this court ALLOWS Plaintiff's Motion to Amend Complaint [DE-10] and DENIES Plaintiff's Motion for Judicial Notice [DE-29], and RECOMMENDS that Defendants' Partial Motion to Dismiss [DE-13] be ALLOWED.

The Clerk shall send copies of the Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

So ordered and submitted the 6th day of September, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge